888 F.2d 1392
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Luther Wayne WHITE, Edward Gene Davis, Defendants-Appellants.
 Nos. 89-5130, 89-5235.
 United States Court of Appeals, Sixth Circuit.
 Oct. 30, 1989.
 
 Before BOGGS and ALAN E. NORRIS, Circuit Judges, and ENGEL,* Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Luther Wayne White and Edward Gene Davis appeal their convictions in the United States District Court for the Western District of Tennessee of transporting stolen vehicles in interstate commerce and conspiracy to transport, store and conceal stolen motor vehicles, in violation of 18 U.S.C. Secs. 371 and 2312 (1982).
 
 
 2
 From June 1986 through May 1987, several new and used pickup trucks were stolen from truck dealerships and individuals in various locations in Tennessee. On May 9, 1987, pursuant to a search warrant, Mississippi and Tennessee highway police searched the premises of defendant Gene Davis in Prentiss County, Mississippi and discovered and seized a number of apparently new trucks and vehicle parts in a wooded area several hundred feet behind his house. Investigation revealed that a number of the parts belonged to vehicles which had been stolen in Tennessee and Alabama. Davis and White, along with several other persons, were subsequently arrested. The other co-defendants pled guilty through a plea bargain before trial. At trial, one of them, William Howard, testified that he, White, and co-defendants Tommy Stout and Randall Keith James stole the trucks on order and delivered them to co-defendant Ellis Davis, Gene's brother, at the former's residence in Corinth, Mississippi. James also testified. He stated that he had sometimes enlisted two minors to steal trucks for him, and on another occasion had paid co-defendant Theodore Siler, an employee at a Ford dealership, for keys to two new trucks, which were then stolen.
 
 
 3
 On appeal, Davis contends that his defense was prejudiced by the government's improper mention of certain fingerprint evidence. In examining one of the Tennessee highway patrol officers who had participated in the search of Gene Davis's premises, the government asked if any fingerprints had been recovered from the articles seized. Counsel for Davis objected. In a hearing outside the presence of the jury, counsel explained that the parties had agreed not to introduce the fingerprint evidence so long as Davis did not offer evidence denying his involvement, because Davis had learned that the prints had been identified as his only five days before trial. The court sustained the objection to the question, but denied Davis's motion for mistrial. During the hearing, a daughter of one of the jurors was present in the courtroom. After the defense rested, the government sought to introduce the fingerprint evidence, although it did not specifically identify the proffered evidence as such within the hearing of the jury. The court again sustained Davis's objection but denied a mistrial.
 
 
 4
 As an alternative ground for reversal, Davis contends that the government violated his Fifth Amendment right against self-incrimination. During White's closing argument, his counsel noted that the government had failed to call Ellis Davis to testify against White. In rebuttal, the prosecution noted Gene Davis had likewise not called Ellis, and repeatedly emphasized the defendant's right to subpoena witnesses. Davis argues that these and certain other remarks in the rebuttal emphasized to the jury his failure to testify on his own behalf.
 
 
 5
 White argues on appeal that the trial court committed reversible error in not allowing his counsel to cross-examine James concerning several indictments pending against him in a Tennessee court in order to impeach James and to show his bias and prior misconduct. White also argues that the evidence was insufficient to support the jury's verdict against him.
 
 
 6
 Upon a careful review of the record as a whole, the court is satisfied that no error in the trial of these proceedings intervened to deny either defendant a fair trial or otherwise to justify a reversal of the judgments of conviction entered against them.
 
 
 7
 With respect to Davis's claim that he was entitled to a declaration of mistrial when the prosecution sought unsuccessfully to question a witness concerning fingerprints found on the stolen goods, we are fully satisfied that the trial judge did not abuse his discretion in denying that motion. In so ruling, we cannot help observing that at best Davis would have been entitled to a new trial, and that in any such trial, the government might well be fully justified in introducing the very evidence which it was precluded from mentioning in the first trial. Certainly it does not appear from the colloquy, which took place outside the hearing of the jury, that the fingerprints belong to someone other than Davis. We do not conceive that a ruling permitting the prosecution to examine witnesses regarding the fingerprints would have itself been reversible error, at least assuming that in connection therewith the defendant would have been accorded adequate time to prepare a further defense. Therefore, the court's error, if any, was not of constitutional proportions, but is subject at best to the harmless error rule, Fed.R.Crim.P. 52(a). The ruling does not appear to have adversely affected any substantial rights of the defendant Davis. Further, since any response to the question concerning the fingerprints was promptly precluded by the judge's interposition, we are also satisfied that any prejudice which might otherwise have resulted was cured by the admonitions given to the jury. Davis asserts that a juror's daughter attending the trial might somehow have communicated to the juror the nature of the colloquy held between court and counsel in conjunction with the admissibility of the fingerprint evidence and in the absence of the jury. This assertion simply finds no support in the record. The trial judge admonished persons attending the trial not to discuss events occurring during it with any juror, and we have no reason to conclude that such admonition was not followed here. While it is true that the trial judge had forbidden counsel for Davis to communicate with the juror herself, no such inhibition was placed upon inquiries of the daughter and no effort was made by counsel to pursue the matter further. We must therefore consider the entire matter as being without consequence for the verdict returned against Davis.
 
 
 8
 Likewise, we do not find any violation of Davis's Fifth Amendment rights against self-incrimination by the prosecution's alleged comments concerning his failure to testify. An examination of those comments leaves the reader with no impression that they were intended to or had the effect of communicating such a comment to the jury concerning Davis's own exercise of his Fifth Amendment right. The comments fall far short of the standard for violations of a defendant's right against self-incrimination: the prosecutor must have manifestly intended to comment on the accused's failure to testify, or the jury could only have understood the prosecutor's remarks as so commenting. United States v. Robinson, 651 F.2d 1188, 1197 (6th Cir.1981), quoting United States v. Rochan, 563 F.2d 1246, 1249 (5th Cir.1977). There can be no finding of manifest intention if there is some other plausible explanation of the prosecutor's remarks. Id.
 
 
 9
 With respect to the appeal of defendant White, we find no error in the limitations placed upon White's counsel in cross-examining Randall Keith James concerning several indictments which had been returned against him and were then pending in a Tennessee state court. The trial court was careful not to restrict inquiry into any possible deals which James might have made with government authorities and which might have affected the truthfulness of his testimony at trial. Nor did the trial court otherwise restrict inquiry and cross-examination of James with respect to other types of bias which he might have entertained, and which would have affected his credibility. Therefore, inquiry into the collateral circumstances of five other crimes of which James then stood accused by indictment constituted a proper limitation upon the ability of defense counsel to pursue unrelated collateral matters, and to distract the jury unduly from evidence relevant to White's guilt in the trial. We find no other error to have been committed in the trial of either defendant which would warrant reversal on such account, and therefore the judgment of the district court is AFFIRMED.
 
 
 
 *
 Judge Engel assumed senior status effective October 1, 1989